RIVER EDGE HOMES, INC., A BODY CORPORATE, PROSE-CUTOR, v. BOROUGH OF RIVER EDGE, IN THE COUNTY OF BERGEN AND STATE OF NEW JERSEY, DEFEND-ANT.

Argued January 20, 1943—Decided July 27, 1943.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and PORTER.

For the prosecutor, *Wurts & Plympton* (*William H. Wurts* and *George P. Moser,* of counsel).

For the defendant, *Weleck & Hawkins* (*James A. Major,* of counsel).

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. *Certiorari* was allowed to review certain assessments laid upon lands of the prosecutor, River Edge Homes, Inc., for benefits resulting from a "local improvement." The benefits said to have been conferred arise out of the extension of the sewer system of the Borough of River Edge.

The history of this and a companion, prior improvement in the municipality began in 1928. At that time the municipality passed an ordinance (No. 201) under which a sewage disposal plant was constructed and in which there is this provision: "* * * that the cost and expense * * *

shall be paid for by general taxation." Sufficient money was appropriated to pay for the disposal plant and the same was constructed.

In the month of May in the year 1929 the governing body caused notice of a public hearing to be given on a further ordinance (No. 221). Under this ordinance it was proposed to construct a trunk sewer as an extension of the sewer system then in service. The plan and object of the governing body was to provide sewer facilities for lands located in the "northern district of the Borough." The ordinance provided for acquiring the necessary land and the appropriation of the money necessary to build the sewer. It also ordained (sections 4 and 5) that this improvement be undertaken as a "local improvement," which is one the cost of which, in whole or in part, is borne by the lands benefited thereby (R. S. 40:56–1). This improvement was completed and assessments therefor have been made at various times under the ordinance (No. 221). The first assessment amounted to $146,464.50. Thereafter, from time to time, as laterals were built, other assessments were levied so that at the time the assessment under review was made approximately ninety (90%) per centum of the improvement cost had been assessed.

It happens that the prosecutor's land was so situated that it could not be served by the trunk sewer merely by constructing laterals. It was necessary in addition that a pumping or "ejector" station be constructed. This because of difference in elevation. One other area within the affected territory has lands similarly situated. Its owner had constructed a lateral sewer and a pumping station and paid for it, as did the prosecutor in this case. Upon completion of the pumping station and lateral sewer by the prosecutor and the acceptance by the Borough, the governing body of the municipality, on April 6th, 1942, appointed commissioners to assess for benefits to prosecutor's lands arising out of the connection thus made with the trunk sewer and the municipal disposal plant constructed under the first ordinance (No. 201). Before the prosecutor had constructed its lateral sewer and pumping station it entered into an agreement with the Borough on July 15th, 1942, in and by the terms of which it agreed to

construct such sewer and station and the municipality, in turn, agreed, provided it approved the construction, that same might be connected to the trunk sewer and that the municipality would accept it and thereafter maintain and operate the sewer and pumping station. All of this was done. One significant item of this agreement should be mentioned (paragraph 17), wherein it is provided: "Nothing herein contained shall operate to relieve the said party of the second part (prosecutor herein), or any lands benefited thereby, from assessment for benefits conferred by the connection of said lands and premises to the trunk line sewer of the Borough of River Edge." The commission on June 8th and June 15th, 1942, gave notice of hearing on the matter of assessments, indicating the several parcels of land to be assessed. (Lands other than those owned by the prosecutor were also assessed at that time.) Subsequently the commissioners filed their report in which they set forth the unassessed construction costs of the sewer *and disposal plant* which provided sewerage service to lands of prosecutor. The commission reported the total unassessed amount, which included an item of $52,383.14, which was the cost of the disposal plant heretofore constructed as a general improvement under ordinance 201. This report was objected to by the prosecutor before the assessment commission. It was also objected to when the report was submitted to the governing body of the municipality. The objections were overruled and the report confirmed. The assessments made from time to time (prior to the instant case), beginning in 1939, for the benefits conferred by the trunk sewer under the ordinance (No. 221) did not include any item of expense for the disposal plant, and it is stipulated that the assessments heretofore made were solely for the construction of the trunk sewer.

The maps in evidence make it clear that the lands served by the trunk sewer fell into different categories. For instance, one area would be benefited by the sewer merely by the construction of laterals. Other areas, as in the case of the prosecutor, could not be served by the sewer unless, in addition to laterals, a pumping station was built; and on the map, *Exhibit P-2*, it is said: "Ejector station and sewers privately

constructed and connected with sanitary sewer system of the Borough of River Edge without assessment for benefits."

The prosecutor contends that the assessments in its case are invalid for these reasons:

(1) That the assessment included a proportionate share of the cost of the sewage disposal plant, and this being a "general" and not a "local" improvement, the assessing of any part of the cost of such general improvement against the lands of the prosecutor was invalid;

(2) That the entire assessment was invalid, even though it contemplated only a proportionate share of the expense of constructing the trunk sewer for the reason that neither the prosecutor nor its predecessors had been notified that it was the intention of the municipal body to pass the ordinance in question (No. 221), so that they were deprived of the opportunity to appear and object to the passage of this particular ordinance. This, they argue, amounts to the taking of property without due process and, further, that not all lands benefited have been assessed.

For answer to the second point the municipality relies, in the main, upon the provisions of the statute, *R. S.* 40:49–6. This provision in our law ordains that ordinances providing for local improvements, of which the case under consideration is typical, shall be published twice and that one publication shall be at least ten days prior to the time fixed for final consideration of the ordinance; and it is also provided that at least one week prior to such time fixed for further consideration and final passage of such ordinance a copy thereof, together with a notice of the introduction thereof and the time and place when and where the ordinance will be further considered shall be mailed to every person whose lands may be affected by the ordinance or any assessment which may be made in pursuance thereof * * * directed to his last known post office address. But there is a further provision that failure to mail the notice herein provided for shall not invalidate any ordinance, proceeding or assessment. Now it is not contended that the ordinance was not published as required by the statute. The prosecutor's complaint is that there was a failure to mail to it, or its predecessors, at the

time appointed, a copy of the ordinance and a notification of the time and place when and where the same would be considered. We think there is no particular merit in this objection because at the time the ordinance was under consideration it is not disputed but that it was published. The prosecutors and those who preceded them had the benefit of such general public notice.

Turning to the reason first stated, we think that any assessment upon lands of the prosecutor to defray any part of the cost of the municipal disposal plant is illegal and must be set aside. First of all, it is obvious that the ordinance under which the municipal disposal plant was built was one that contemplated and authorized a "general" improvement in the statutory sense and not a "local" improvement. The ordinance itself provides that the "cost and expense * * * shall be paid for by general taxation." The improvement was made and the cost thereof met by general taxation, not by assessment against lands specially benefited. No assessment of any part of that cost was laid upon any property except in the present instance. (Compare *Burstiner* v. *East Orange,* 100 *N. J. L.* 385.)

The municipality relies on the statute, *R. S.* 40:56–52, to justify the assessment as made. We need express no opinion on the validity of the statute for the reason that in our judgment it is inapplicable to the situation before us for this reason: It is stipulated by the parties that no assessment to defray the whole or any part of the cost of the municipal disposal plant was laid against any lands in the entire area except those of prosecutor. It is unjust and discriminatory to impose an assessment against these particular lands and no others when all lands were benefited alike. And, again, there is testimony in the case that the mayor of the municipality stated that "there would be no assessment for disposal plant costs on any property already assessed for trunk sewer costs." We are obliged to accept this statement as a fact because it is not contradicted or challenged in any way by the respondent. The inherent obstacle to approving the assessment (or that part of it representing part of the cost of the disposal plant) is that that improvement was undertaken

as general and may not be transmuted into a local improvement at the whim of the Commissioners of Assessment or the governing body. Secondly, such assessment, in the circumstances, would be discriminatory. Compare *Agens* v. *Newark*, 37 *N. J. L.* 415; *Davis* v. *Newark*, 54 *Id.* 144, and *Burstiner* v. *East Orange, supra.* Here no such charge was levied against lands previously assessed and similarly served. The assessments, however, for benefits to the lands of the prosecutor from the extension of the trunk sewer were proper. No valid reason is advanced to the contrary. The lands are benefited. The sewage is carried off by the trunk sewer and the lands thus served commensurately increased in value. But as the assessment under review includes the illegal feature of the disposal plant, that element of it must be set aside. However, under the Act of 1881 (now *R. S.* 54:4–59, &c.), the court is entitled to fix the amount assessable and hereby fixes it at the sums assessed for the extension of the trunk sewer. Each of the parties being successful in part, no costs will be allowed.