197 N.J. Super. 296 (1984)
484 A.2d 1269
JOSEPH MEGLINO, APPELLANT,
v.
TOWNSHIP COMMITTEE OF THE TOWNSHIP OF EAGLESWOOD AND TOWNSHIP OF EAGLESWOOD, ET AL., RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted November 5, 1984.
Decided December 3, 1984.
*299 Before Judges McELROY, DREIER and SHEBELL.
Roeber & Sellitto, attorneys for appellant (Leonard W. Roeber, on the brief).
Gilmore & Monahan, attorneys for respondents (Thomas E. Monahan, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
*300 Plaintiff appeals from an order of the Law Division dismissing the complaint by which he challenged the Township's method of financing and implementing sewer service along Dock Road in the Township of Eagleswood. The original complaint had been filed on behalf of 108 residents and property owners; however, by consent order, plaintiff alone prosecuted the review of the Township's actions with the proviso that any other of the original plaintiffs could apply to be included if the court subsequently granted relief.
The issues in this case involve an attack upon the method of financing the sewer system and the use of "Grinder Pump Agreements" required of participating property owners. The Township, with a year-round population of approximately 1,000, experiences a 50% increase in population during the summer months, largely in the area of Dock Road, an area subject to tidal flooding and having an elevation less than 10 feet above sea level. Waste removal in the Township is currently provided by individual septic tank systems. Over the years, however, these systems have proven to be unsatisfactory in the vicinity of Dock Road because flooding has occasioned pollution of the ground water and adjacent waterways. Considering the elevation of the area, the Township determined that a gravity feed system would be inappropriate. Rather, a low pressure conveyance system with individual grinder pumps was deemed the most suitable for the area.
The Township Engineer's proposed system, selected after a four year study, was approved by the United States Environmental Protection Agency (EPA) and the New Jersey Department of Environmental Protection (DEP). The estimated cost for the sewer system is $1,384,624, of which the EPA agreed to give the Township a grant of $818,075 and the DEP a grant of $78,849. The Township also negotiated a 40 year, low-interest Federal loan in the amount of $340,700. The total of $1,237,624 from grants and loan was $147,000 short of the total estimated *301 cost of the project. The Township proposed to raise this additional amount through connection fees to be imposed with respect to the sewer system.
The Township by ordinance required all properties along Dock Road to connect to the system and established connection fees at $600 per connection, based upon 245 estimated potential hookups. It is currently estimated that only 175 users will tie into the system, necessitating a higher connection fee under the Township's plan. The Township has also established an initial annual service charge of $354, 40% of which will be applied towards the repayment of the principal and interest on the 40 year construction loan, and the balance for the operation of the system.
Under the Federal and State grants the Township will be able to supply each lot with a grinder pump unit, the function of which is to liquify the sewage and impel it into the main under low pressure, permitting the system to run uphill. The "Grinder Pump Agreement" will permit the Township to install and maintain the unit on the premises owned by each property owner, with title to the pump remaining in the Township (a condition required for qualification for the Federal grant). The homeowner would allow access by Township personnel to the pump location for the purpose of performing inspections, maintenance and repairs to the equipment. The homeowner must also (1) furnish the electrical power to operate the grinder pump; (2) be responsible for any repairs and replacement caused by his negligence or intentional act; (3) not sell or mortgage the grinder pump; (4) not "obstruct access to the grinder pump unit and accessories by placing walls, pavement, landscaping, or other obstructions which would make access, maintenance or removal and repair of the equipment and accessories difficult"; and (5) have the agreement recorded, binding the homeowner as well as his successors and assigns.
An individual property owner who does not wish to sign the Grinder Pump Agreement would be required to purchase and *302 install his own similar unit at a cost of approximately $3,000 to $5,000. There are a few (21) homes that could feed the main on a gravity basis; no funding would be available to such home-owners.
The parties have stipulated these facts and, in addition, agreed that the EPA and DEP have advised the Township that new funding is practically nonexistent. If the project is not built as approved, the grant money will be lost and it is probable that a sewer system would not be built within the Township.
We further note from the stipulation of facts that the method of funding the project had been approved by both the DEP and EPA. These agencies, of course, by their approval do not adjudicate the validity or invalidity of the funding arrangements; this function devolves upon this court.

I
The Township here initially challenges the untimeliness of plaintiff's action in the Law Division. R. 4:69-6(b)(4) limits the filing of complaints in actions in lieu of prerogative writs to a 30 day period after the passage or adoption of a public improvement ordinance. Plaintiff's action was filed approximately 90 days after such passage. The Township failed to raise this matter in the Law Division and, therefore, we have no guidance from the trial judge as to whether the "interests of justice" called for the enlargement of the 30 day period under R. 4:69-6(c). We now determine that defendant may not raise the 30 day limitation at this time for two reasons.
First, plaintiff claims that the ordinance is void for establishing an assessment plan unauthorized by statute. Earlier cases have held that one who is affected by the passage of an illegal ordinance may attack the assessment separately, even though the time to challenge the ordinance has passed and such attack may implicate the issue of validity. Yanuzzi v. Spring Lake, 22 N.J. 567, 570 (1956); Rutan Estates, Inc. v. Belleville, 56 *303 N.J. Super. 330, 339 (App.Div.), certif. den. 30 N.J. 601 (1959). Plaintiff should not be procedurally precluded from challenging the "connection fees" and "user charges" or the "Grinder Pump Agreement" when the attack is basically on the municipality's failure to provide for either a general or local improvement ordinance as defined in the statutes.
Second, the statute of limitations is an affirmative defense required to be raised by motion or in the answer under R. 4:5-4. The Township appears not to have been prejudiced by the 60-day delay. Although it might be argued that the Township's answer could be amended to include this defense, it would be highly improper to permit such amendment post-judgment. In effect this defense has been waived. Waldor v. Untermann, 10 N.J. Super. 188, 193 (App.Div. 1950).

II
Plaintiff argues that the Township, by utilizing the Grinder Pump Agreement, is attempting to take a portion of his property without just compensation. The trial judge found that the option given to the homeowner, to sign the agreement and be bound by its terms, or to purchase, install and maintain his own grinder pump, was "within the police powers of the municipality." N.J.S.A. 40:63-52 provides the authority for a municipality to require "all buildings located upon a street in which a sewer ... main is constructed, to be connected with the sewer." The municipality is further permitted "to provide for the improvement, maintenance and repair of such connections, and to prescribe the kind of materials to be used in the original connection." In a gravity feed system all that may be needed is a simple pipe connection. In this low pressure system a grinder pump is necessary. The statute further provides that "whenever any of the work herein provided for is done, it shall be at the expense of the owner or owners of the land in front of or upon which the same is done." The Grinder Pump Agreement *304 does not add to the homeowner's obligation; it provides a cheaper alternative.
The municipality has not required that any homeowner sign or abide by the terms of the agreement. It has, after years of negotiation, obtained a benefit from the State and Federal governments that will permit the abutting homeowners to receive a benefit from these grants, in consideration for an easement for the location of a municipally-owned grinder pump and access for the repair and maintenance of the same, as described earlier. Under these circumstances, there is no question of a "forced" easement. There is no exercise of the power of eminent domain infringing upon the homeowner's constitutional rights. U.S. Const., Amend. V and Amend. XIV, § 1; N.J. Const. Art. 4 § VI, par. 3.

III
The method of financing this improvement does raise a significant legal question. Were defendant a municipal sewer authority, N.J.S.A. 40:14A-8 might provide the basis for requiring the initial users of the system to defray the net costs thereof.[1] There is no corresponding provision relating to municipally-owned and managed sewers. N.J.S.A. 40:63-7; Crowe v. Tp. of Sparta, 106 N.J. Super. 204, 206 (App.Div.), certif. den. 55 N.J. 79 (1969). The authority to construct a public improvement does not of itself confer the power to levy assessments to pay for the improvement; such power must be conferred by the Constitution, statute or charter. Gabriel v. Paramus, 45 N.J. 381, 383 (1965).
The trial judge found the general language in N.J.S.A. 40:63-7 to be an adequate basis upon which to assess against the initial users of the system the unreimbursed costs of the project. We disagree. The authority in N.J.S.A. 40:63-7 to *305 "fix and prescribe such charges, rents, rules, regulations, conditions and restrictions as to connection with and use of sewers and drains" does not speak to the assessment of the initial cost of the system. This precise question was left open in Crowe v. Tp. of Sparta, supra, 106 N.J. Super. at 206. The court there voiced uncertainty as to whether the holding in River Edge Homes, Inc. v. Borough of River Edge, 130 N.J.L. 376, 380 (Sup.Ct. 1943) had proscribed sewer rates designed to recapture the original cost of the sewer system. We now determine that N.J.S.A. 40:63-7 cannot be read as delegating to municipalities the unregulated right to recoup the cost of construction of a system. For that purpose the Legislature has given a municipality four options; first, to create a municipal utility authority under N.J.S.A. 40:14A-1 et seq.; second, to enact a local improvement ordinance under N.J.S.A. 40:56-1 et seq.; third, to absorb the cost of the sewer system as a general improvement; and, fourth, to use a hybrid approach, financing part of the costs locally and the balance generally.
By the Township's attempt to finance this project as if it were a municipal utilities authority, the taxpayers lose their ability to object to the same at a public hearing and, if necessary, avail themselves of the safeguards afforded under N.J.S.A. 40:56-26 through 30. Under a local improvement the assessment is limited to such benefit as specially appointed assessors may find has accrued to each abutting property. The owners of unimproved abutting lots are assessed on the same basis as the owners of improved lots. The assessments are limited by the lower of the cost of the improvement and the enhanced value of the property. McNally v. Tp. of Teaneck, 75 N.J. 33, 34 (1977). An assessment in excess of these ceilings constitutes a taking of private property without compensation. Norwood v. Baker, 172 U.S. 269, 279, 19 S.Ct. 187, 190, 43 L.Ed. 443, 447 (1898); McNally v. Tp. of Teaneck, 75 N.J. at 43.
*306 As to the unimproved lots, the benefit conferred need not be a present benefit. Therefore, under N.J.S.A. 40:56-27, unimproved lots are deemed benefited based upon their reasonably anticipatable future use. In Ridgewood Country Club v. Borough of Paramus, 55 N.J. 62, 69 (1969), a country club abutting a street in which sewers were being installed was held properly assessable as undeveloped land benefited by the sewers and the matter was remanded for determination of the proper assessment.
In the present case, the municipality has established a "connection" fee without a balancing as to what benefit the sewers have given the particular property. Vacant lots fronting on the new sewer system are not included. Because of these flaws the ordinance is ultra vires and invalid. Parenthetically, we may note that even if a municipal utilities authority were employed, nonusers must be included in any assessment. Airwick Industries, Inc. v. Carstadt Sewerage Authority, supra, 57 N.J. at 121. Although there is no question that the properties fronting upon Dock Road would obtain an immediate benefit from the installation of sewers, the cessation of septic tank discharge into the bay and the pollution attendant thereto might well be found to be enough of a general benefit to the community so that all or part of the unreimbursed expense might be carried as a general rather than a local improvement.
Since, as noted above, four reasonable alternatives are given to the municipality to finance the sewer improvement, the municipality, not the court, should make this policy decision. The unreasonableness we have found here is only as to the methodology employed, and in no way implicates the desirability of the project or the type of system chosen by the municipality. We, therefore, reverse the judgment of the Law Division only insofar as it confirmed the authority of the municipality to proceed under N.J.S.A. 40:63-7 to finance the unreimbursed portion of the project by connection charges and user fees falling disproportionately upon the initial users of the system. *307 The matter is remanded to the Township Committee for the enactment of amendatory ordinances either to establish a municipal utilities authority, or to assess all or a portion of the unreimbursed costs of the system as a local or general improvement. We do not retain jurisdiction.
NOTES
[1] But see, Airwick Industries, Inc. v. Carstadt Sewer Authority, 57 N.J. 107, 121 (1970), discussed infra.