692 A.2d 966

RUSSELL SWANSON, LOIS SWANSON, KEN BERGER AND SUE REPKO, PLAINTIFFS–APPELLANTS, AND BENJAMIN CRAN-STON, PLAINTIFF, v. THE PLANNING BOARD OF THE TOWN-SHIP OF HOPEWELL, THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF HOPEWELL, THE MAYOR OF THE TOWNSHIP OF HOPEWELL AND THE HOPEWELL TOWNSHIP BOARD OF HEALTH, DEFENDANTS–RESPONDENTS, AND TOLL BROTHERS, INC., DEFENDANT–INTERVENOR–RESPON-DENT.

April 28, 1997.

This matter having been duly considered and the Court having determined that certification was improvidently granted;

It is ORDERED that the within appeal be and hereby is dismissed.

STEIN, Justice, concurring.

I infer that the Court's decision to dismiss this appeal primarily reflects its view that, pursuant to *Rule* 4:69–6, plaintiff's preroga-tive-writ action filed in April 1995 was instituted far too late to permit meritorious review of its challenge to a 1995 subdivision approval. That subdivision approval was inextricably related both to a zoning ordinance amendment enacted in 1990 and to an underlying 1989 agreement between the Township of Hopewell (Township) and a developer. The Court was informed at oral argument that the sewer pumping station and force main that were instrumental in the negotiation of the 1989 agreement al-ready have been constructed by the Township, in reliance on the provisions of that agreement, as amended in 1992. Although the lower courts addressed the merits, both the Appellate Division and Law Division appeared to conclude that because of the relation-ship between the subdivision, the 1990 zoning ordinance amend-ment and the 1989 agreement, the relaxation of *Rule* 4:69–6 to permit plaintiff to maintain this action could not be justified.

I am in substantial agreement with that conclusion, and therefore concur in the dismissal of this appeal. Our precedents acknowledge that in the interest of justice, *see Rule* 4:69–6(c), the forty-five day period for challenging municipal action can be enlarged for good cause. *See Reilly v. Brice,* 109 *N.J.* 555, 558–61, 538 *A.2d* 362 (1988); *Brunetti v. Borough of New Milford,* 68 *N.J.* 576, 585–87, 350 *A.2d* 19 (1975). Nevertheless, despite the significant public interests that are involved, the delay of approximately five years between the amendment to the zoning ordinance and the institution of suit, combined with the municipality's construction of the pumping station and force main in reliance on the 1989 agreement, render inappropriate enlargement of the forty-five day period to an extent sufficient to permit adjudication of this appeal on its merits. See *County of Ocean v. Zekaria Realty,* 271 *N.J.Super.* 280, 287–88, 638 *A.2d* 859 (App.Div.), *cert. denied,* 513 *U.S.* 1000, 115 *S.Ct.* 510, 130 *L.Ed.2d* 417 (1994).

However, because the underlying issue posed by this appeal presents an unsettled "question of general public importance," *see R.* 2:12–4, I write separately to reflect my concern about the manner in which the Township addressed its need to finance construction of the pumping station and force main. In my view, this record reflects a profoundly disturbing relationship between the Township's obligation to finance a facility to replace a failed sewer-treatment plant, a landowner's agreement to bear the entire cost of the replacement facility, and the Township's undertaking to rezone the landowner's property and approve expeditiously the subdivision of that property. Were the merits to be addressed, the critical issue would be whether the landowner's voluntary payment of the entire cost of the new pumping station and force main constituted an unlawful exaction that impermissibly tainted the zoning and subdivision approval of the landowner's property.

I

The facts are essentially undisputed. The property that is the subject of the subdivision approval and zoning ordinance amend-

ment challenged by plaintiffs is adjacent to a development in Hopewell Township known as Princeton Farms. The Princeton Farms Development, consisting of 121 homes on mostly half-acre lots, was served by a small sewer-treatment plant that began to fail in the 1980s. Because of that failure, the Township entered into an Administrative Consent Order with the Department of Environmental Protection and Energy (DEPE) that required it to replace the sewer-treatment plant either by constructing a new plant or by demolishing the existing plant and constructing a pumping station and force main to permit the sewerage to flow to the plant operated by the Stonybrook Regional Sewerage Authority. The Township elected the latter option. A revised wastewater management plan was approved by Mercer County and DEPE. That plan contemplated the extension of the existing Princeton Farms sewer-service area to include approximately 117 acres of land owned by Suzanne Usiskin. In 1988, the Township adopted a bond ordinance that reflected its intention to levy a special assessment on all owners benefited by the pumping station and force main.

In August 1989, the Township entered into an agreement with Usiskin that was authorized by a resolution adopted at a public meeting of the Township Committee. Pursuant to that agreement, Usiskin agreed to pay all costs incurred by the Township for the construction of the pumping station and force main not to exceed $1.7 million. The Township agreed to amend its zoning ordinance to rezone Usiskin's property into an R–100 zone that permitted one residential unit for each half-acre of property, subject to the stipulation that no more than seventy units would be constructed on the entire property.

The agreement between the Township and Usiskin included a number of novel provisions. For example, paragraph 14 of the agreement, entitled "Contingencies," not only stipulated that the agreement was subject to the Township Planning Board's adoption of a resolution approving a final subdivision plan of seventy residential units and the passage of the statutory appeal period

without challenge, but also included the following termination provision:

> If the planning board fails to approve the Preliminary/Final Major Subdivision under current ordinance design standards, or if it conditions the approval of the Preliminary/Final Major Subdivision in a manner that would in the reasonable judgment of the Owner (i) substantially increase the project development costs above the costs anticipated from the application submission, or (ii) would unreasonably delay project implementation and completion, or (iii) otherwise unreasonably restrict the Owner's ability to implement the project in an economically reasonable way, this agreement may be terminated by the Owner.

Significantly, paragraph 14 required the planning board to approve the subdivision under *current* ordinance design standards, with the result that subsequent amendments to the zoning ordinance would not apply to the subdivision even if the application for subdivision approval were filed subsequent to the adoption of the amendment.

In addition, the agreement provided that the owner would have no obligation for off-site improvements other than a *pro rata* contribution to nearby intersection improvements of adjacent roads. The agreement further provided that if the first building permit was not issued within one year of the amendment to the zoning ordinance rezoning Usiskin's property, or within six months after the construction of the pumping station and force main, the owner's right to challenge or contest the $1.7 million sewer assessment would not be preempted by the provisions of the agreement. In such event, the agreement provided that the Township would rely exclusively on its authority under the enabling statute to levy the assessment and not on the terms of the agreement.

Prior to entering into the agreement with Usiskin, the Township hired an appraiser to determine the benefits that the pumping station and force main would provide to property owners who would be serviced by that improvement. In a report dated July 1, 1989, the appraiser determined that the total benefit would be $1,594,500, but that no benefit would be realized by the homeowners in the existing Princeton Farms Development. The appraiser also concluded that the benefit to the Usiskin property

would be approximately $1,530,000, but that assumption was based on the rezoning of the property from the R–200 zone to the R–100 zone.

Pursuant to the 1989 agreement, the Township's planner recommended that the Master Plan be amended and that the zoning of the Usiskin property be changed to R–100. In April 1990, the Township Committee amended the zoning ordinance and rezoned the Usiskin property into the R–100 zone. The resolution authorizing amendment of the zoning ordinance explicitly recited the relationship between the amendment and the 1989 contract with Usiskin, pursuant to which Usiskin had agreed to pay up to $1.7 million to cover the entire cost of the pumping station and force main. In September 1992, the Township and Usiskin amended the 1989 agreement to acknowledge that the Township already had constructed the pumping station and force main at a total cost of $1,684,838, and Usiskin explicitly consented to the reasonableness of that cost. The amendment also provided that on the assumption that the proposed subdivision would contain sixty lots or more, each lot would be assessed in the amount of $24,069.11. In accordance with the provisions of the 1989 agreement, the assessment would be payable over twenty years at an interest rate of 6.95%. Usiskin waived the necessity of formal assessment pursuant to the local-improvements statutes, *N.J.S.A.* 40:56–1 to – 89.

In June 1994, Toll Brothers, Inc. (Toll) and Usiskin entered into an agreement pursuant to which Toll agreed to develop Usiskin's property. Toll applied to the planning board for approval of a seventy-lot subdivision in September 1994. The planning board conducted three public hearings concerning the subdivision. The planning board granted preliminary and final subdivision approval in February 1995. Plaintiffs instituted this action in April 1995 challenging the legality of the subdivision approval, the 1990 amendment to the zoning ordinance, and the 1989 agreement between the Township and Usiskin.

## II

The obvious issue that would have been presented, had this litigation been timely filed, was whether the 1989 agreement between the Township and Usiskin constituted on illegal exaction because Usiskin undertook to pay the entire cost (up to $1.7 million) of the pumping station and force main in exchange for a rezoning and subdivision approval. Significantly, the defendants themselves disagree concerning the source of the Township's authority to require Usiskin to pay the entire cost of the sewer improvement. Toll and the Township Planning Board assert that the payment is authorized by *N.J.S.A.* 40:55D–42, a provision of the Municipal Land Use Law (MLUL) that allows municipalities to impose on developers their pro-rata share of certain off-site improvements necessitated by construction within a proposed subdivision or development. The Township Committee, the Mayor, and the Board of Health disagree, asserting that Usiskin's agreement to pay for the entire sewer improvement is authorized as a consensual assessment for benefits under the local-improvements statute, *N.J.S.A.* 40:56–1. In my view, neither the MLUL nor the local-improvements statute serves as authority for the Township to require Usiskin to pay the entire cost of the sewer improvement.

*N.J.S.A.* 40:55D–42 provides in pertinent part as follows:

The governing body may by ordinance adopt regulations requiring a developer, as a condition for approval of the subdivision or site plan, to pay his pro-rata share of the cost of providing only reasonable and necessary street improvements and water, sewerage and drainage facilities, and easements therefor, located outside the property limits of the subdivision or development but necessitated or required by construction or improvements within such subdivision or development. Such regulations ... shall establish fair and reasonable standards to determine the proportionate or pro-rata amount of the cost of such facilities that shall be borne by each developer or owner within a related and common area....

In *New Jersey Builders Association v. Bernards Township,* 108 *N.J.* 223, 234–38, 528 *A.*2d 555 (1987), we reviewed the legislative history and case law concerning *N.J.S.A.* 40:55D–42. We concluded that the plain meaning and obvious legislative intent was to limit municipal authority to require developers to contribute to the

cost of off-site improvements to only those improvements the need for which arose as a direct consequence of the particular subdivision or development under review. *New Jersey Builders Assoc., supra,* 108 *N.J.* at 237, 528 *A.*2d 555. On the basis of the expansion of the sewer service area to include both Princeton Farms and the Usiskin tract, it would be reasonable for the Township to have concluded that the need for the pumping station and force main arose in part as a direct consequence of the proposed Usiskin subdivision. But by no stretch of the imagination could the Township, acting under the authority of *N.J.S.A.* 40:55D–42, have determined that Usiskin's "pro-rata share of the cost of providing ... [the new] sewerage ... facilities" would amount to the entire cost of the project. Obviously, if Usiskin or Toll had contested the imposition of the $1.7 million cost as a condition of subdivision approval, the Township could not conceivably have sustained a requirement that the whole cost be paid by the Usiskin development. *See Longridge Builders, Inc. v. Planning Bd.,* 52 *N.J.* 348, 350, 245 *A.*2d 336 (1968). A fair share of the cost would have had to be borne by the Princeton Farms property or by the Township's general fund.

Nor can Usiskin's agreement to pay the entire cost of the sewer improvement be sustained on the basis of the authority conferred on the Township by the local-improvements statute, *N.J.S.A.* 40:56–21 to –89. Pursuant to that statute, the officer, board or commissioners making an assessment are required to make a just and equitable assessment of the benefits conferred on *any* real estate by reason of a local-improvement. *N.J.S.A.* 40:56–26. Nor can a municipality usurp the authority of the assessment commissioners by predetermining the area benefited by the improvement. See *Schad v. Sea Isle City,* 127 *N.J.Super.* 196, 199, 316 *A.*2d 731 (Law Div.1974). Under the statute, "the assessment is limited to such benefit as specially appointed assessors may find has accrued to each abutting property." *Meglino v. Township Comm.,* 197 *N.J.Super.* 296, 305, 484 *A.*2d 1269 (App.Div.1984), *rev'd on other grounds,* 103 *N.J.* 144, 510 *A.*2d 1134 (1986). Had the Township proceeded under the local-improvements statute, it would have

been manifestly improper for the entire cost of the pumping station and force main to have been assessed against the Usiskin property. The Princeton Farm development would have been required to bear its fair share of the cost of the improvement.

## III

The possibility that municipal decisions concerning zoning of undeveloped property or conditions of subdivision approval could be subject to influence by a payment from a developer substantially in excess of any amount that lawfully could have been imposed is fundamentally incompatible with the principles underlying the MLUL. That Act's essential purpose was "to guide the appropriate use or development of all lands in this State, in a manner [that] will promote the public health, safety, morals, and general welfare." *N.J.S.A.* 40:55D–2a. The power of municipalities to zone is delegated by the Legislature and its exercise must conform to the boundaries of that delegation. *Riggs v. Township of Long Beach,* 109 *N.J.* 601, 610, 538 *A.*2d 808 (1988). Thus, a zoning ordinance ordinarily must advance one or more of the purposes of the MLUL, must be "substantially consistent with the land use plan element and the housing plan element of the master plan," *N.J.S.A.* 40:55D–62a, and must comport with due process and the statutory procedures for adoption. *Riggs, supra,* 109 *N.J.* at 611–12, 538 *A.*2d 808. Extraneous considerations, such as a developer's voluntary contribution to defray the cost of a municipal obligation, should not be permitted to influence or affect municipal zoning decisions. Similarly, in circumscribing a municipality's power to impose the cost of off-site improvements on developers, we have expressed our concern about disproportionate impositions and emphasized the need for planning boards, in imposing such charges, to act in accordance with prescribed standards:

> It is clear to us that, assuming off-site improvements could be required of a subdivider, the subdivider could be compelled only to bear that portion of the cost which bears a rational nexus to the needs created by, and benefits conferred upon, the subdivision. It would be impermissible to saddle the developer with the full cost where other property owners receive a special benefit from the improvement.... In view of the need for such apportionment, there must be adequate

standards and procedures for determining how the allocation of costs should be made. The Legislature carefully has circumscribed the power of planning boards by requiring that the power be exercised in conformity with standards set forth by ordinance. Without an appropriate ordinance setting forth standards and procedures, the planning body would be left with an impermissibly broad range of discretion in exacting off-site improvements from subdividers; landowners and developers would have no basis for planning; and reviewing courts would be without a measuring rod to gauge the validity of the imposition.

[*Longridge Builders, supra,* 52 *N.J.* at 350–51, 245 *A.*2d 336 (citations omitted).]

Our case law has been extremely sensitive to the threat presented by unlawful exactions imposed by a municipality on developers, whether the developers are reluctant or enthusiastic participants in the transaction. Thus, in *West Park Ave., Inc. v. Ocean Township,* 48 *N.J.* 122, 124–28, 224 *A.*2d 1 (1966), we invalidated an agreement extracted from a developer by a municipality requiring the payment of $300 per house to the local Board of Education to finance capital improvements or additional schools. We held the exaction to be unauthorized and therefore illegal, and required all money paid to be refunded. *Id.* at 127, 132–33, 224 *A.*2d 1.

Similarly, in *Nunziato v. Planning Board,* 225 *N.J.Super.* 124, 541 *A.*2d 1105 (App.Div.1988), the Appellate Division determined that the developer had agreed to contribute to the municipality $203,000 for its affordable housing fund in order to induce the planning board to grant the developer's application for variances and site-plan approval. *Id.* at 133, 541 *A.*2d 1105. In fact, the planning board originally had suggested that if the developer made such a contribution "it would be taken into consideration" when reviewing the developer's application. *Id.* at 129, 541 *A.*2d 1105. The court declared that the board's improper solicitation of an unauthorized contribution from the developer required that the approvals be invalidated:

We conclude that the kind of free-wheeling bidding under review is grossly inimical to the goals of sound land use regulation. The intolerable spectacle of a planning board haggling with an applicant over money too strongly suggests that variances are up for sale. This cannot be countenanced. Proceedings in which this has occurred are irremediably tainted and must be set aside.

[*Id.* at 134, 541 *A.*2d 1105.]

## IV

In view of the Court's disposition of this appeal, no constructive purpose would be served by expressing a definitive conclusion about the validity of the 1989 agreement and its effect on the subsequent zoning ordinance amendment and subdivision approval. Nevertheless, in reviewing municipal planning and zoning decisions concerning development applications that contemplate payments by the developer for a prescribed local purpose relevant to the application, courts must be vigilant to insure that such payments do not constitute unlawful exactions that have the capacity to subvert the meritorious review process contemplated by the MLUL. Similarly, municipal officials must be scrupulously careful to avoid the imposition of conditions to approvals of development applications that, even though acceptable to the applicants, could not be imposed without their consent. In such circumstances the developer's acquiescence to the conditions imposed by the municipality may, in reality, constitute an improper incentive that impermissibly taints the municipality's action on the development application, and thereby undermines the principle of objective and impartial review of development applications that the MLUL is intended to assure.

Justices HANDLER and O'HERN join in this opinion.